Our next case is Robin Batiste versus Bethlehem Landfill Good morning. Mr. Coulson? Good morning, Your Honors. May it please the Court, Nick Coulson for the appellate, I'm sorry, the appellants of the Batiste as well as the putative class. This is an appeal from the District Court's order dismissing my client's three-count class action complaint for failure to state a claim. The District Court's opinion has the result of stripping essential property rights from thousands of people, in this case directly, and countless other Pennsylvania residents that live near sources of any one of a number of types of industrial pollution. Specifically, we contend that the District Court broke with precedent when it imposed numerical and proximity restrictions on the appellant's private nuisance claims that don't exist. Anywhere? I'm sorry? Anywhere? Not in the state of Pennsylvania. There are states that take that view with private nuisance that there is a numerical limitation. Pennsylvania does not. Number two, misapplied the special injury requirement with respect to the public nuisance claim. And three, wrongfully found that the appellee owed no duty to my clients, where its own affirmative acts caused them a form of property damage that is recognized under the law in Pennsylvania. This case is about a really important set of rights. Use and enjoyment are among that core bundle of property rights that every first-year law student in America learns about on the first day of property class. And Pennsylvania Supreme Court has recognized that the hallmark of Western civilization is freedom of speech and the right to own property. That's from Somerville Will, 406 PA 207. The very first section of the first article of Pennsylvania's Constitution lists acquiring, possessing, and protecting property as among the inherent and indefeasible rights given to all. And it specifically notes that this includes the right of every man and woman to use their property. So that's what's at issue in this case. The appellant's causes of action are essential to the preservation of their property rights. Those rights are inherent and indefeasible, as recognized in every corner of Pennsylvania's law, and a right that cannot be enforced is no right at all. There is no way for the court to affirm this order without upending the status quo of environmental tort law in Pennsylvania. So what do you make of the court's reliance, the district court's reliance, your opposing counsel's reliance on the first Meridian case? So the one Meridian Plaza case, we talk about one way to sort of harmonize it with the state of the law in our brief, but I think that there's another way, which is the one Meridian case, in addition to all the factual differences that we discuss in our brief, the injury to the property interest is derived only from the violation of the public right. Meaning that the way the court looked at it, there was not a direct impact to the property that was caused by the nuisance. There was a lack of access to the property that was the same violation of the public rights suffered by the public at large. So here we have direct impacts to the property as well as the violation of a separate public right, and that's the key distinction here, your honor. You're asking to represent approximately 8,400 homeowners or residents in a couple mile vicinity, but how is your, how are the alleged injuries of those who you seek to represent special? So your honor, they're special in that they are property rights. The right to use and enjoy your property will always constitute a special injury as compared against a public right. Your class is property owners? It's owners and renters of residential property, your honor. And so no matter, it's, there's extensive authority and something I intend to get to very shortly, to the effect that no matter how many people are affected in their individual property rights, it cannot become a public nuisance. There has to be an interference with a separate public right, and that's where we believe the origin of the district court's error was, is that it treated the accumulation of a large number of people's property rights as the same thing as a public right, and that's not what the law requires. This action was filed under CAFA, right? That's correct, your honor. So the court, the district court had jurisdiction under CAFA. This is a motion that was on the pleadings. We, the complaint states that, that the class definition may be subject to revision based on ongoing discovery, but there's this argument that there's sort of going to be boundless liability created if our position, which is, as we assert the law, as it has been many decades, is entrenched in the court's order, and that's simply not true. We'll only penalize small violators and not big violators. That's precisely the case, Judge Roth. That's precisely the case. It would incentivize, frankly, the worsening of corporate emissions because at some certain point you'd become immunized from the impacts. Because you're too big? Because your pollution is too big. Too big. Right. Whether you're a small neighborhood source or whether you're a large industrial polluter, you simply would become immunized and you would be given a grant to pollute, a pollution easement over your neighbor's property. Based on the allegations that you make in your complaint, how does the public nuisance claim differ from the private nuisance claim? So the public nuisance claim, the special injury in the public nuisance claim is the same harm at issue in the private nuisance claim. It's the loss of the use and enjoyment of the property. There are, the difference obviously is that with the public nuisance claim, you have to compare it against the private right that's being violated, which is a constitutional right to breathe uncontaminated air. There are, in terms of the relief that's available, in terms of the statute of limitations, there are differences between the two causes of action that make it desirable to be able to advance both of them. And so that's why it doesn't make sense to just say, well, can't you just bring it as a private nuisance and leave the public nuisance thing out of it? There are rights in terms of abatement. There are statute of limitations differences for public nuisance that differ between the two causes of action. But don't we have state and federal agencies now that control pollution and that penalize polluters, factories that are emitting too much smog, landfills that are emitting too many odors? And can't we depend upon those agencies to cure the situation? We do have them, Judge Roth, and we cannot depend on them exclusively to enforce private property rights. So this is an argument that the APALE has made, right, that even though that they want to argue that these people have no cause of action in court, none of the three that we've asserted that have been traditionally applied in this field, that it's OK because PADEP will regulate this. This argument is a little bit like saying, well, my neighbor is punching me in the face. I'm going to call the police. Hopefully, at some point, the police will show up and stop my neighbor from punching me in the face. But that still does nothing for the violation of my rights that have occurred up until the point where, hopefully, the police stop my neighbor. And the police have a much better response time than PADEP does. In every one of these cases that we've brought, in the cases in recent history that we've discussed in Pennsylvania, there has been some action on the part of PADEP, which has been woefully insufficient, both to stop the problem and... They've brought enforcement actions against the Bethlehem landfill, have they not? They've issued citations against the Bethlehem landfill. But there's been nothing in terms of... First of all, the injunctive component of these cases recognizes that the primary appropriate role for regulating these facilities is with the regulatory authority. But the regulatory authority is without the power to grant damages, for example, for the private property rights. And the statutory scheme, the Solid Waste Management Act, goes out of its way to preserve people's ability to bring private causes of action, as they have historically in these causes of action. The FLE's brief literally states, at page six, that this case exemplifies how private nuisance and negligence remedies are inappropriate for claims regarding the public impacts of large regulated infrastructure facilities. But if that were true, there would be no need for statutes like the Right to Farm Act, which was at issue in the Gilbert case, which is so central to the negligence analysis here, which provides exactly the kind of nuisance immunity the defendant wishes it has for certain agricultural operations. It doesn't exist for landfills. Not only is there no similar act for landfills, but as I discussed, the Solid Waste Management Act goes out of its way to preserve these causes of action, to preserve every right at law or at equity that property owners have. So the idea that these causes of action are not available is just wrong. Similar cases like this have gone forward in the state for many decades. And so the FLE is making an argument that should be made, if at all, to the legislature. To the defense bar's credit, I want to put the argument that's being made here really quickly in some context. They continue to find new and innovative ways to sort of attack these cases on the pleadings. Before this, the tactic du jour was the idea that these common law claims are preempted by the Clean Air Act. Judge Fisher, you were on the panel for Bell versus Cheswick, which is a case my firm was involved in. In that case, this court rejected the argument that these claims were displaced by the Clean Air Act. And starkly, there was no assertion by the defendant in that case that the thousands of homeowners in the class had not alleged the elements of private nuisance or negligence or public nuisance. This is a new theory. It was never raised in the Batty's case that we cited in our briefs by the same skilled counsel who here represents one of defendants' amici. That case settled for $2 million. It was raised and rejected in the Leedy case that we cited in our briefs. Just last week, my firm obtained preliminary approval of a settlement worth $8.5 million involving nuisance and negligence claims from a large coke plant in Allegheny County. So these cases continue to go forward as they have, although the idea that reversing this order would open the floodgates of litigation is simply not true. All it would do is maintain the status quo. On the other hand, affirming this order would bar the courthouse doors to countless Pennsylvanians whose rights are being violated. We're already seeing that, some of the impacts of this decision. The Court of Common Pleas for Northampton County has already indicated some willingness to follow the district court's guidance here. So there's an extraordinary risk of ripple effects that this could really affect the property rights of people across the Commonwealth. The nuisance cause of action are inextricably tied up in the rights to use and enjoy property. There is no way to properly protect that right, be it through regulatory or administrative oversight, without allowing people to come into court and enforce their property rights. When someone gets a permit from the state, even through its authority from the federal government, that is not a license to overtake the property rights of the people who live around it. With respect to your negligence claim, right, you're pursuing that on a theory of affirmative acts? That's correct, Your Honor. That's correct. And the affirmative acts would be the release of these toxins? No, the affirmative acts would be the defendant's actual landfilling practices. So bringing in garbage, depositing it in the landfill, covering it, doing things that are supposed to capture the pollutants before they emit, those are the affirmative steps that are taken. And the FLE concedes that nothing in Gilbert abrogates the standard rule that one is responsible for the impacts of one's own acts. It's simply a matter of whether contamination on property in the air constitutes property damages, as our authorities set forth. Isn't the basis of your claim the same allegations that are in the nuisance claim? No, Your Honor. The negligence claim focuses on the defendant's conduct. The nuisance claim focuses on the impacts. And so there are quite a number of facts that are distinct to each of them that separate the two. I see my time is up. Thank you, Your Honor. Thank you, Counselor. Rolands. Good morning, sir. Good morning, Your Honors. Matthew Rolands with the Amnesty Curia Public Interest Law Center in Philly Thrive. I hope in my three minutes today to drive at two points for the Court. First, the private nuisance class actions are essential for protecting the property rights of the communities that the amici serve, specifically poor communities that suffer disproportionately from industrial pollution. And second, that the lower court's ruling, which vitiates the private nuisance class action, I must emphasize it vitiates that class action, is contrary to Pennsylvania law, it's contrary to the restatement, and it's contrary to common sense. And it stems from a confusion over the different doctrines of public nuisance on the one hand and private nuisance on the other, as explained in the erudite opinion of Butts v. Southwestern Energy Company. Scores of studies have shown not only that poor communities and communities of color are disproportionately burdened by our society's environmental pollution, but also that environmental laws are under-enforced in these communities. Private nuisance is thus a crucial tool for protecting the property rights of the residents of these communities. As this Court recognized in Bell v. Cheswick, private nuisance is a unique remedy, distinct from the public regulatory scheme and serving entirely different interests. Specifically, private nuisance vindicates the bundle of property rights that common law courts have protected for centuries, the right to use and enjoy one's home free from unreasonable interference by one's neighbor. Such rights are not extinguished simply because one's neighbor is a factory or a landfill, as in this case. For ordinary persons, vindication of such rights depends upon the ability to aggregate small claims and modest resources into a class action. Yet here, the lower court held that when many persons are affected by a nuisance, a nuisance caused by a factory or another polluter, as opposed to just a few residents, those property owners lose their right to sue in private nuisance. So can a private nuisance also be a public nuisance? As a restatement states, you can bring public nuisance and private nuisance claims at the same time, but a public nuisance is related to a right common to the general public, not a private right to the use and enjoyment of one's property. So if you're complaining at the same time that you can't use your house to sit around your swimming pool, you're also making a public nuisance claim against the odors in the air that are causing that. That's correct. And that's the appellant's assertion in this case. And I just want to emphasize a point made by the appellant. The lower court's ruling is irrational. It would effectively immunize the very worst actors for responsibility for their widespread invasions of public property, private property, excuse me. And if anything, such actors should be more liable for their invasions, not less liable. You know, your honors, I see that's my time. If the court has any further questions, I'm happy to answer them. Otherwise, the amici respectfully request that this court reverse the lower court's ruling dismissing the private nuisance claims in this case. Thank you, sir. Thank you. Mr. Klein. Good morning, your honors. May it please the court. My name is Eric Klein. I represent Bethlehem Landfill Company. Plaintiffs ask this court to be the first appellate court, state or federal, to recognize a private right of action for mass nuisance. They haven't labeled it that way, but they've brought a claim in which they claim to be same way as 20,000 other some people. Mass nuisance claims what this is. Well, 20,000 other landowners or renters or 20,000 people who circulate through this area. The former, your honor. They allege 8,400 households are in their geographic area. If you assume that two and a half people, roughly, as is the Pennsylvania national average, live in those 8,400 households, we're talking about tens of thousands. So if only 10 houses were affected, you have no problem. But because you pollute over a much bigger area, you're saying it's too big. We can't solve the problem. That's correct, your honor. And that is not... What number then? Is it 100? Is it 200? Is it 1,000? There is no way a court is going to be able to draw a line at an exact number, but the Pennsylvania Supreme Court has provided a test that's more flexible than just a hard number that does draw a boundary between private nuisance and public nuisance. When has a court in Pennsylvania capped the number? The court in Gavigan v. Atlantic said that the level is at the level of a neighborhood. So that was a case where a plaintiff brought a private nuisance action. So a neighborhood can be densely populated or it can be very sparsely populated? And that's exactly the beauty of a test like this because this is a tricky area of hard and fast rules. We have to have a flexible standard. And you're exactly right, Judge Restrepo, that a neighborhood can be densely populated or it could be a rural area that doesn't have density. And that's going to matter because the key factor here is the number of plaintiffs. When it gets too large, what you're talking about is a fundamentally public problem that deserves to be handled by public authorities that are accountable to the public. And let's suppose that they wouldn't do anything. That's not exactly the case here because DEP has taken steps here. But just suppose that DEP, for whatever reason, manpower, what have you, decided they weren't going to do anything involving your landfill. Does that mean that those homeowners are helpless? Not at all, Your Honor. DEP is the first possible remedy that people have. And in fact, we all agree here that DEP has been active with respect to this landfill. Plaintiff's Own Complaints cites a number of violations. DEP is not ignoring this landfill. They're regulating. But let's assume that Your Honor is correct and DEP isn't going to deal with this problem. The law gives plaintiffs in this position lots of other remedies. Number one, Pennsylvania's Solid Waste Management Act says not just that state authorities, but local authorities can bring public nuisance action. In the law, and this is 35 P.S. 6018.604b, a borough or municipal solicitor can bring a public nuisance action. A county DA can bring a public nuisance action. So here, under the Savings Clause, anybody can bring any available remedy, right? That's correct, Your Honor. That's correct. And that's correct. And we are not making a... You're just saying this class is too big. That's exactly right. It is way too big because once it affects a certain number of people, it is fundamentally the public's business. So here... Pennsylvania hasn't said that. Pennsylvania Supreme Court has not said that. No, I actually think that the Pennsylvania Supreme Court has in fact said it if you look at the reasoning of the cases that have come before.  that we're making. In fact, take a look at a case called Edmonds v. Duff from 1925 of the Pennsylvania Supreme Court. That's a case where 100 years ago, a lawyer stood before the Pennsylvania Supreme Court and made the exact same argument I'm making here, which is to say once a private nuisance gets to be too big, it is fundamentally a public nuisance and a private plaintiff can't bring it anymore unless there's a special or distinct injury. Now in Edmonds v. Duff, the Pennsylvania Supreme Court did not say that's crazy. That's a brand new theory. That's not how nuisance law works. That's not what they said at all. They said, no, no, that may be. But in this case, the number is small enough. And this gets to your question, Judge Restrepo. That was a case where the Pennsylvania Supreme Court helpfully did some number tallying. There were 140 plaintiffs in a neighborhood that the court said was at least 400 households and more that weren't counted. So what you had there was a subset of the neighborhood. And because of that, the Pennsylvania Supreme Court said, there you go. This is a small enough private nuisance action that these plaintiffs can sue, the amusement park that was coming into their neighborhood. It was an application of the earlier principle in Gavigan that I referenced a moment ago where the court said, you plaintiff, you're alleging that there's oil in your basement from industrial operations nearby. You can bring this action because you have an injury distinct from what has been suffered in the neighborhood. That was their reasoning. But what if 20,000 people have oil in their basement? At a certain point, if something is affecting 20,000 people, it becomes the community's business. Now, so let me But the Supreme Court of Pennsylvania has not said that. I would argue, Your Honor, that in Gavigan and Edmonds, the Supreme Court did say that. You can bring the 140 of you can bring it in Edmonds. But as Judge Ross has said, suppose it impacted 20,000. I don't see if the Supreme Court of Pennsylvania has put a cap on the size of the group that could bring a class action like this. The logic of Gavigan compels that answer, Your Honor, because the court in Gavigan said, Because your injury is distinct from the rest of the neighborhood, you may bring a private action. If the whole neighborhood had been affected, the logic of Gavigan, as the court spelled it out, would have been different. That becomes a public matter. And that's not a new argument. We say it becomes a public matter. Does that mean you can't bring a class action if it's a public matter? It means that there is not a private right of action for nuisance. But I do want to talk about the other remedies that are available. Judge Ross, you started to discuss this in a question to opposing counsel, but there's more to say. So for example, the plaintiffs live in the borough of Freemansburg. The proposed class area encompasses the entire borough of Freemansburg and more. Freemansburg has a municipal solicitor. That person, whose every single constituent is in this proposed class, is empowered to bring a public nuisance action. The same Pennsylvania law empowers the Baptistes, the plaintiffs, to intervene in that action to protect their rights. And the Savings Clause would allow them to bring a class action, independent of what the solicitor does or doesn't do. The Savings Clause, Your Honor, allows the plaintiffs to bring whatever rights they have in common law. And we're arguing here that they don't have the right to bring a mass nuisance action at common law. So they have to rely on a solicitor to do it. That is one way they can do it. They can rely on a county DA to do it. Any citizen also has rights under almost every environmental statute. You can bring a citizen suit action under any environmental statute to enforce a violation of that statute. And that includes permits. So there's a Clean Air Act permit here. There is a permit that may be a RFRA permit here. The Baptistes have the right to bring citizen actions to enforce those permits. Why isn't this the equivalent of that? Why isn't the fact that they named it public or private nuisance? What's the difference? The difference, Your Honor, is they are different remedies. And fundamentally, the citizen suit action is an action to enforce the law as if the public had brought it, as if the Attorney General, DEP, or EPA had brought it. A private nuisance action is an action for damages. And that is important here. The problem with 20,000 people bringing a private nuisance action is that 20,000 private damages actions are an existential threat to a defendant. And so if 20,000 or 50,000... Yeah, you could almost get up to the 5 million that CAFA requires. The plaintiffs actually are not saying that 20,000 is small enough and that there's some higher number that's too many. There's no number that's too many. 10 million nuisance actions wouldn't be too many. They're saying in this case, it's not too many. That's what they're saying. We're talking about this case. They have not said, Your Honor... We are. We're deciding this case. That's right. But 20,000 is far above what any appellate court has ever recognized to be allowable as a private nuisance. And... Mr. Klein, so we... Whatever we decide, we have to predict what Pennsylvania law would be on this. Should we certify this question to the Pennsylvania Supreme Court? No, Your Honor. This is not a case for certification. And the reason for that is it doesn't meet the test for certification. There is a three-part test in Pennsylvania Appellate Rule 3341. I'll briefly step through those steps. Number one, a justification for certification could be that the question of law is one of first impression and is of substantial public importance so as to require prompt and definitive resolution. This is not a question of first impression. As I said, in Edmonds, 100 years ago, a lawyer stood up and made the same argument that I'm making here. And the court there recognized the principle while saying 140 plaintiffs is not too big. Here, we have 20,000. 20,000 is far more than an order of magnitude larger. It's not a class action, right? Sorry? That case was not a class action. No, that case was not a class action. But to be clear, we're not arguing that you could never bring a class action because there can be a class that's 140 people. That's not too small to be a class. And in fact, there's a case called Bruny v. Exxon that Amiki cited in which a class action was brought because there was a spill at a gasoline station and they had to find a class that lived in something like a five or six square block area. That would be a proper use of a class action for a private nuisance claim that would be appropriate in size. So what here if the plaintiffs divided their 20,000 up into communities like six different communities of 3,600, is that too much? It's too much, Your Honor, because... So then they divide those up in 10. So we've got communities of 360. Can all those communities bring actions? The reason that doesn't work, Your Honor, is because that's artful pleading, but it why private nuisance is limited in this circumstance. You're still just aggregating tens of thousands of claims. And once that happens, you are talking about a public matter, even if you plead it artfully. But you're aggravating aggravated people. Who's... Your Honor, I don't think anyone disagrees that in this case, there is no action for public nuisance privately unless there is a special injury. How do you reconcile this public policy argument you're making with the Savings Clause that makes it clear that these rights, both statutory and common law rights, the individual has the ability to bring them? Your Honor, the Savings Clause doesn't create rights where they didn't exist before. So my argument is that... But didn't exist. This never existed. It wasn't something that's destroyed. We're not making a preemption argument here. It just never existed at common law. So the Savings Clause doesn't create it. It simply leaves what was in place in place. This could never have been brought even in 1900, 1920, when the foundational cases were decided. And I would actually like to address fundamentally the reason why. It's not just an obstacle that's somehow unfair. There's a reason behind it, and this is the reason. If you allow 20,000, 50,000, 10 million people to bring private nuisances, what you are doing is allowing a jury of 12 people to potentially hand out a damages award that is an existential threat to a defendant. Isn't that true in every class action? We hear that all the time from defense attorneys in class actions. Yes, Your Honor. But here, the reason that a public nuisance... A public nuisance claim is different than other types of claims that might be in a class action because it is fundamentally a balancing. The law on nuisance is a matter of balancing the rights of property owners, the rights of a landfill, the rights of a water treatment plant against the needs and rights of property owners nearby. So here... How is that different from the rights of management as opposed to the rights of the labor? There's always a balancing component in all of these cases. The answer is, Your Honor... Let me see if I can drill it down. If a private nuisance claim is brought by 10 million people because there's contamination in municipal water that creates a private nuisance for 10 million people, which is an act that would be proper if this court rules in favor of the appellants. If 10 million people can sue the water treatment plant for private nuisance, the water treatment plant is in dire danger of going extinct, and that is something that affects the whole community. But the community doesn't have the right in a private nuisance action to have... There is no greater danger to go extinct than if the case is brought by the solicitor from the local community. You're saying the public at large can't bring it, but a solicitor could. Yes. And the difference is that the solicitor actually has democratic accountability to that community. The solicitor is in a role where he can balance that exact question. The county DA can do that. DEP can do that. The attorney general can do that. But if two people who live a mile and a half away from a plant or a landfill can have the ability to bring a class action with damages capable of destroying a vital unit of public infrastructure, then the two plaintiffs and the jury are the only ones that have any say. The hundreds of thousands of other people who rely on a landfill don't have any say in what happens to that landfill. They need to rely on a properly operated landfill as opposed to a landfill that's polluting the neighborhood. And just quickly to address the issue of... How do you inspire the landfill to run the landfill correctly? Two answers. Apparently, it's been investigated. It's been fined. And they're still complaining. So maybe we need to find a better remedy than the government itself using its enforcement mechanisms. A few answers. Number one, I want to address the word pollution and the word toxin that Your Honor, Judge Restrepo used at a certain point. There are not allegations of pollutions or toxins in this case. There are allegations of odors. And it is a difference. Number two... Well, I think an odor is a pollution of the air in that the air smells bad. I won't take up that battle at this moment, Your Honor. And to Judge Ross's point, this might get the landfill's attention. And they may do something to correct the problem. Yes, but Your Honor, the ruling that this court makes is one that is going to have to be used not just in this case, but in all sorts of cases. There were cases in this circuit and in New York. If we let the district court decision stand, then nobody could bring these claims. Your Honor, someone with a private nuisance that actually lives near the landfill could still bring a private nuisance action. I mean, I don't see anywhere in the law if you say lives near a landfill. I don't see anywhere in the Pennsylvania law this concept of adjacency, which the district court found for the private nuisance. Well, let me... There are actually... The concept of neighboring, which was identified in Gavigan by the Pennsylvania Supreme Court has been cited in myriad of cases, including I would point to one called Hercules in this court in 1985, where Judge Higginbotham wrote that... Let me give you the quote because it's a good one. He said, private nuisance is an action that has a historic quote, a historic role resolving conflicts between neighboring contemporaneous landowners. And Judge Higginbotham italicized the word neighboring. That is not a red herring. That's a part of what a private nuisance is. It is a claim among neighboring landowners. And the problem is once it stops being that, we are handing the power to 12 jurors to make decisions that properly belong with democratically accountable public authorities. That is why... And I want to be clear. I'm not asking the court to make that policy judgment. I am arguing that that policy judgment is already encoded in the common law and that that is why what I'm saying and what my counterpart 100 years ago in Edmonds was saying is not a crazy creative argument that's meant to just protect wrongdoers from accountability. There are many other routes. And in fact, you've heard me a couple of times say, why not a claim from 10 million people? And that sounds outlandish. But in fact, there have been cases where private nuisances have been alleged by virtue of alleged contamination in municipal water. And district courts, one in New Jersey, one in New York, both in the last decade, said that's a public nuisance. You can't bring a private nuisance claim. That's not a crazy theory that we've invented for this case. The Northern District of New York didn't think so. The District of New Jersey didn't think so. And if plaintiff's theory of nuisance is correct, that any size of private nuisance is okay, then a claim by 50,000 people, 100,000 people, 10 million people who are water customers in New York City, those can all be private nuisance claims against a water utility. And that's a situation where the water utility is then at the mercy of a private lawsuit. And all the people that depend on clean water who aren't a part of that lawsuit have no recourse. They don't have recourse to their public officials, because those public officials are cut out of such a lawsuit. That's why the law, going all the way back to the beginning of nuisance, does say that once a private nuisance gets too big, it's fundamentally the public's business. And the public's democratically accountable leaders are tasked with dealing with it. It's not a crazy theory that we've just made up for this case. It doesn't remove accountability, because there are many other forms of accountability. As I mentioned, various routes through the Solid Waste Management Act in Pennsylvania, straight through local authorities in every district and municipality in Pennsylvania, and for every citizen. Under the citizen suit actions in RCRA, Clean Air Act, if private nuisance were something that was available to 10 million people, all those statutory remedies wouldn't be necessary. But they're there because they're filling the gap that does, in fact, 10 million. We're not talking about 10 million in this case. No, but logic, Your Honor, of the plaintiff's position. You can make that argument in any case. No, in this case, Your Honor, the decision of this court would be reversing the decision of the District of New Jersey in Rowby-Dupont, of the District of Northern District of New York in Baker v. Saint-Gobain Performance Plastics, where those courts said, these municipal water contamination cases are too big for a private nuisance. If this court disagrees, those cases were wrongly cited. We understand your position. One more point, if I may, although I see I'm over time. Certainly, in the negligence section of this case, there's a misreading of the key case. The plaintiff said in their brief, an airborne contaminant is a physical damage to a property that's required for a negligence claim. That is not what Gates v. Roman Haas says. In that case, it was a carcinogenic chemical called vinyl chloride, and that is why it was proper physical damage, because it was carcinogenic. That case does not say that odors create physical damage to a property. A negligence claim requires physical damage to a property, and the plaintiffs have not alleged that here. That's described in more detail in our brief, and I'll rest it there. Thank you, Your Honors. I'll do my best not to set a land speed record in two minutes here. I think it's rebuttable. Restatement section 821B, which was quoted in Butts v. Southwest Energy Production Company, conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. It couldn't be any more straightforward. The contours of a nuisance claim, whether it's a private nuisance claim or whether it's the actionable special injury under a public nuisance claim, are constrained by their substantive elements. You need to have a substantial, unreasonable interference. This parade of horribles that we're hearing where half of the population of the Eastern Seaboard brings a class action, it's just not justified in reality. There has to be a substantial, unreasonable interference with the use of property, and it has to have been caused by the actor who's creating the nuisance. That protects against the concerns that we heard the defense counsel raise. This idea that there could be existential liability, that it is absolutely the case that that's possible in most class actions, but if you can't afford to pay for the property rights of thousands of people, you probably just shouldn't take them. What about referring this matter to the Supreme Court of Pennsylvania? We agree on one thing, Judge Roth, that this is not an issue of first impression. If this is an issue of first impression, any time someone tries to graft elements onto a cause of action that don't exist, that would be a first impression. There would be basically an available tactic in every single case. I want to apologize to the court. There's an authority, and I'm happy to submit a Rule 28 J letter on this, but there's an authority that's not cited in our briefs, Heinel v. Petscher 330 PA 232, where the Supreme Court of Pennsylvania quotes Clark and his principles of equity, stating that the fact that a private nuisance is also a public nuisance because it affects a large portion of the public should not in any way diminish what would otherwise be the rights and remedies of the private individual, and this seems to be the prevailing view. Can you give us the Atlantic second side on that? There's some of us who are not Pennsylvania. I apologize, Your Honor, I don't have that citation with me. How about you send us the letter? I would be happy to do that. How about 198 Atlantic 797? Thank you, Judge Fisher. Professor Fisher. That same case also states that it seems to be plain that a private action for public nuisance may be maintained by one who is not the sole or even a peculiar sufferer if his grievance is not common to the whole public but is a common misfortune of a number or even a class of persons. So that's absolutely on all fours with what we have here. Really, really briefly, I wanted to just note that one Meridian Plaza, while the district court followed it on or purported to follow it on the public nuisance claim, the court there addressed also private nuisance claims from the vast class and large number of individual plaintiffs that were before it in that case and never found that there were too many of them to assert claims for private nuisance because that's simply not an element of the cause of action. Also, to clarify the record, there are not 20,000 people in this class. As Judge Roth identified, the class only includes the owners and occupants of these properties. So it's just a way of inflating to a larger number, perhaps to sound a little bit scarier, but as the class is defined, we're looking at about 8,500 people. And then finally, I'll leave it to the court to review our authority on the issue of whether or not the presence of contaminants constitutes a physical injury. We think that what it states is that either a tangible effect of a pollutant on a property or the fact that it's a hazardous substance, which is absolutely the case here, either of those things qualify. So hydrogen sulfide is the main constituent of landfill gas. We allege landfill gas throughout our complaint. It's listed in almost every list of hazardous substances that the government puts out. So it is a hazardous substance in and of itself. It's a dangerous substance, but we can get there alone on the tangible impacts through the odor. Thank you, sir. Thank you, Your Honor. Thank you, gentlemen. We'll take this under advisement. Thanks for your briefing. We'll take a...